**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-02850-DDD

IN RE: RICKY LEE SIEGFRIED, Debtor.

RICKIE LEE SIEGFRIED,

    Plaintiff,

v.

SHELLY MENTER,

    Defendant.

---

## ORDER

---

    This case requires the court to decide whether a bankruptcy court erred when it found that a debtor's obligation to pay part of the mortgage on his ex-wife's house was a domestic support obligation and thus a non-dischargeable debt in bankruptcy. Defendant Shelly Menter began divorce proceedings in Colorado state court against Plaintiff-Debtor Ricky Lee Siegfried in 2003. In 2005, the state court ruled that Mr. Siegfried must pay half of the mortgage debt on Ms. Menter's home and that this payment was "in the nature of support." Years of state-court appeals by Mr. Siegfried ensued. While those appeals wound their way through the Colorado court system, Mr. Siegfried petitioned for bankruptcy under Chapter 13 of the Bankruptcy Code and instituted an adversary action against Ms. Menter to determine if his mortgage obligation to her was dischargeable. After hearing evidence, the bankruptcy court concluded that the mortgage obligation was a domestic support obligation and thus

non-dischargeable in bankruptcy because of Ms. Menter's need for support to remain in her home. Mr. Siegfried has appealed that factual finding to this court. Because the bankruptcy court's finding was supported by a plausible reading of the record and thus not clearly erroneous, it is **AFFIRMED**.

## BACKGROUND

Ms. Menter and Mr. Siegfried were married from 1999 to 2005. Doc. 7 (Record on Appeal of "ROA") at 634. During that time, they lived in a home in Denver that Ms. Menter had purchased before the marriage. *Id.* In 1999 before they married, the house was subject to a mortgage in Ms. Menter's name of $153,000. *Id.* During their marriage, Ms. Menter and Mr. Siegfried went on a spending spree buying timeshares, a new truck for Mr. Siegfried, and other items. *Id.* at 635. They financed their spending with debt. *Id.* By 2003, their home was subject to $380,000 in mortgages, all of them in Ms. Menter's name. *Id.*

In 2003, Ms. Menter filed for divorce in Colorado state district court. *Id.* The Colorado district court held a trial and entered a final order in July 2005. As pertinent here, the state court ordered Mr. Siegfried to pay Ms. Menter half of the mortgage debt ($163,700) on their house, and that his payment was "in the nature of support":

> There has been no evidence or testimony presented that [Mr. Siegfried] contributed any separate assets or premarital funds into this marriage. All funds contributed by [Mr. Siegfried], to the extent he contributed funds, were marital. [Mr. Siegfried] did, however, receive the benefit of his own and wife's labors, and contributed to the parties' incurring significant marital debt. [Ms. Menter's] contributions of income and assets were both separate and marital. [Ms. Menter's] separate estate suffered significantly because of the actions of both parties in incurring marital debt, but [Ms. Menter] has not received fair compensation from [Mr. Siegfried] for her share of the marital assets, nor any significant contribution by [Mr. Siegfried] to the marital debt in [Ms. Menter's] name that he also incurred.

2

...

> The Court finds, based on the standards set forth in §14-10-113 C.R.S. that the parties should equally divide all marital assets and marital debts. The Court finds all debt on [Mr. Menter's] home from date of marriage through December 31, 2003 ($198,000 + $147,000 + $35,000 = $380,000) over and above the amount of [Ms. Menter's] premarital mortgages ($153,000) is marital. Parties will each pay 1/2 this $227,200 debt. Since all this debt is in [Ms. Menter's] name, [Mr. Siegfried] shall reimburse [Ms. Menter] a total of $113,500 in marital debt.

> ...

> The Court finds that no maintenance shall be awarded to either party under §14-10-144 C.R.S., based on the short duration of the marriage and on the fact that [Ms. Menter] is currently earning approximately the same amount as she was when the parties married. However, the Court considers the funds owed by [Mr. Siegfried] to [Ms. Menter] (division of marital property and debt) to be in the nature of support, and shall not be dischargeable in bankruptcy.

*Id.* at 150–51.

Mr. Siegfried appealed this order, and the Colorado Court of Appeals affirmed in part and reversed in part. Pertinent here, the Colorado Court of Appeals ruled that "the trial court lacked jurisdiction to enter an order precluding dischargeability of the lump sum [mortgage] he was ordered to pay his wife" because "no bankruptcy petition had been filed." *Id.* at 316. But notably, the Court of Appeals did not reach or address "[Mr. Siegfried's] alternate argument that the property equalization payment is not actually in the nature of support." *Id.*

On remand, the district court made no further findings regarding the lump-sum mortgage payment Mr. Siegfried owed Ms. Menter. *Id.* at 637. Nor was this finding altered as a result of the later appeals Mr. Siegfried filed with the Colorado Court of Appeals. *Id.*

In 2011, while Mr. Siegfried's appeal of the divorce order was ongoing, Mr. Siegfried filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Colorado. *Id.* In 2015, Mr. Siegfried filed an adversary proceeding against Ms. Menter to determine whether the mortgage obligation he owed Ms. Menter was a non-dischargeable domestic support obligation under 11 U.S.C. § 523(a)(5). *Id.* Employing the two-step analysis from *Taylor v. Taylor (In re Taylor)*, 737 F.3d 670, 676–77 (10th Cir. 2013), the bankruptcy court concluded that (1) the Colorado state court intended Mr. Siegfried's mortgage obligation to be a domestic support obligation, and (2) that the mortgage obligation was in substance a domestic support obligation.

On the latter point, the bankruptcy court performed a thorough analysis of the record. Importantly it found that "the function and substance of Mr. Siegfried's obligation to Ms. Menter was to allow her to make the payments on the Home, and the Home was necessary for Ms. Menter's support." *Id.* at 640. The bankruptcy court also found that:

> the most significant factor is Ms. Menter's need for support. Although there was no imbalance of the parties' income, there was a substantial imbalance of the debt the parties incurred during marriage. Ms. Menter believed the debts incurred solely in her name would be paid off or substantially paid down when Mr. Siegfried received funds from construction projects with which he was involved. One construction project did not materialize as hoped. Another … produced a significant return, but Mr. Siegfried dissipated those funds. Ms. Menter was left without an ability to pay the debts incurred during the marriage. She needed the payments from Mr. Siegfried to pay the mortgage on the Home. Her clear need for support likely motivated the District Court to find Mr. Siegfried's payments to be in the nature of support and, therefore, nondischargeable in bankruptcy, even though that latter determination was premature.

*Id.* at 641. The bankruptcy court thus found that the mortgage payment was non-dischargeable. *Id.* Mr. Siegfried appealed this finding. The

court has appellate jurisdiction to review final orders and judgments of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), (c)(1)(A).

## DISCUSSION

Like penance for a penitent, the general policy enshrined in the Bankruptcy Code is one of absolution for a debtor overburdened by his debts. *In re Sampson*, 997 F.2d 717, 721 (10th Cir. 1993). In legalese, most debts are *dischargeable* under the Bankruptcy Code. But Congress has excepted certain categories of debts from this general policy in favor of discharge. One kind of non-dischargeable debt is a "debt for a domestic support obligation," 11 U.S.C. § 523(a)(5), which the Code defines as "in the nature of alimony, maintenance, or support" of a former spouse "without regard to whether such debt is expressly so designated." *Id.* § 101(14A). All other debts "incurred by [a] debtor in the course of divorce" are dischargeable under certain circumstances. *Id.* § 523(a)(15), § 1328(a).

To determine whether a debt is a non-dischargeable domestic support obligation, the Tenth Circuit requires that courts apply a two-part test. First, a court looks to the agreement between the parties to determine if the parties intended the debt to be one for support. *In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993). Where, as here, the debt in question was created by state court order, it is that court's intent that is relevant for purposes of this question. Second, the court reviews the substance of the obligation to determine whether it is, in fact, in the nature of support. *Id.*; *see also In re Taylor*, 737 F.3d at 676. This latter inquiry looks at multiple factors that all focus on the "critical question" whether the obligation serves the function of support at the time of divorce. *In re Sampson*, 997 F.2d at 726. Notably, the way state law labels a debt isn't controlling when the function of debt is support. *Id.* at 722

("A debtor's lack of duty under state law to support his or her former spouse does not control whether an obligation to the former spouse is dischargeable in bankruptcy.").

Mr. Siegfried and Ms. Menter dispute, at the outset, the standard of review this court must apply to the bankruptcy court's determination that the debt payment was a domestic support obligation and thus non-dischargeable under Section 1325(a)(5). Luckily, this dispute has an easy answer because there is Tenth Circuit authority directly on point: "Whether an obligation to a former spouse is actually in the nature of support is a factual question subject to a clearly erroneous standard of review." *In re Sampson*, 997 F.2d 717, 721 (10th Cir. 1993). Without citing any relevant authority, Mr. Siegfried says that the bankruptcy court's determination was a legal one and should be reviewed *de novo*. Doc. 18 at 8. But that runs counter to *Sampson*. So the court reviews the bankruptcy court's finding for clear error. Under that standard, the pertinent question is whether the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). The reviewing court must be "left with the definite and firm conviction that a mistake has been committed" to overturn the finding on appeal. *Id.*

The bankruptcy court's finding clears this bar. As to the first part of the two-part *Taylor* test, the Colorado state court clearly intended that Mr. Siegfried's mortgage obligation was in the nature of support. It said so: "the Court considers the funds owed by [Mr. Siegfried] to [Ms. Menter] (division of marital property and debt) to be in the nature of support." ROA at 150–51. As to the second part, the bankruptcy court relied on several facts in the record to determine that debt was substantively in the nature of support. It found, first, that Ms. Menter was in need of support. It reasoned that "shelter is an essential component of support" and requiring Mr. Siegfried to pay part of the mortgage on Ms.

Menter's home allowed "her to make [her] mortgage payments" and stay in her home. *Id.* at 640. It also found that "the most significant factor was Ms. Menter's need for support" based on the "substantial imbalance of the debt the parties incurred during the marriage." *Id.* at 641. In the light of these facts, the bankruptcy court's conclusion wasn't clearly erroneous.

Mr. Siegfried responds with several arguments, none of which leave this court with the firm conviction that the bankruptcy court's finding was implausible. His primary argument is that because the Colorado state court expressly refused to award maintenance under Colo. Rev. Stat. § 14-10-144, the mortgage payment wasn't in the nature of support. Doc. 16 at 10–13. But this runs counter to the express characterization of the debt by the Colorado state court that the obligation was "in the nature of support." ROA at 150–51. And it likewise is belied by other facts in the record relied on by the bankruptcy court that the purpose of the debt was support. Mr. Siegfried makes a related argument that because the Colorado state court ruled that Mr. Siegfried had to pay half of the mortgage debt under the factors outlined in Colo. Rev. Stat. § 14-10-113 the debt was a property equalization payment, not a domestic support obligation. Doc. 16 at 9–10. To be sure, Colo. Rev. Stat. § 14-10-113 is the Colorado law that governs the division of marital property in a divorce proceeding. But Mr. Siegfried's argument overlooks the fact that whether a debt is a domestic support obligation is a question of federal law and a bankruptcy court is supposed to look at the substance of the debt, not the label state law gives it. *In re Sampson*, 997 F.2d at 722. Finally, Mr. Siegfried cites the facts that the mortgage debt was initially to be paid in a lump sum, and that, after the Colorado state district court converted the debt to be paid in periodically over time, those payments weren't terminable upon Ms. Menter's remarriage. Doc. 16 at 16–17. These are factors that could support a conclusion that the debt wasn't a

domestic support obligation. *See In re Goin*, 808 F.2d 1391, 1393 (10th Cir. 1987) ("Support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; … and an obligation that terminates on remarriage or death is indicative of an agreement for support"). But the district court did convert the mortgage payment from a lump sum to installment payments. ROA at 641. And more to the point, these facts don't undermine the plausibility of the bankruptcy court's reading of the whole record[1] as to render that reading clearly erroneous.

The fact remains that Mr. Siegfried saddled Ms. Menter with a large amount of debt. That debt threatened Ms. Menter's ability to stay in her home. And so the Colorado state district court required Mr. Siegfried to pay Ms. Menter part of the mortgage and expressly concluded that that payment was support. This might be one of those cases where there is evidence that could support either conclusion; in such a case it is this court's obligation to affirm the bankruptcy court's decision.

---

[1]   Mr. Siegfried repeatedly argues that the bankruptcy court erred when it reviewed record evidence beyond the Colorado state court's order because doing so constitutes review of a state court order in violation of the *Rooker-Feldman* doctrine. Doc. 16 at 13–15. The *Rooker-Feldman* doctrine has no application here. "The *Rooker–Feldman* doctrine precludes 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Tal v. Hogan*, 453 F.3d 1244, 1255–56 (10th Cir. 2006). Ms. Menter wasn't the state-court loser in this case; Mr. Siegfried was. And she didn't file the adversarial proceeding challenging the Colorado state-court's conclusion that the mortgage payment was in the nature of support; Mr. Siegfried did. And the bankruptcy court didn't act as an "appellate" court when it analyzed the Colorado court's decision. *Id.* It reviewed the decision and the record evidence to determine the nature of Mr. Siegfried's obligation—precisely what he asked the bankruptcy court to do.

## CONCLUSION

The court **AFFIRMS** the bankruptcy court's finding and **DIS-MISSES** Mr. Siegfried's appeal. The clerk is ordered to enter judgment in favor of Ms. Menter and to terminate the case.

Dated: August 3, 2020.

BY THE COURT:

Daniel D. Domenico
United States District Judge